1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IVAN LEE MATTHEWS,**<br><br>Petitioner,<br><br>v.<br><br>**KIM HOLLAND,**<br><br>Respondent. | **Case No. 1:13-cv-00427 LJO MJS (HC)**<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, warden of California Correctional Institution in Tehachapi, is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented by David Eldridge of the office of the California Attorney General. Respondent declined magistrate judge jurisdiction on May 15, 2013. (ECF No. 9.)

## I.   PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kings, following his conviction by jury trial on January 21, 2009, of assault by a life inmate causing great bodily injury with enhancements. (Lodged Doc. 7, Clerk's Tr. at 202.) On June 26, 2009,

1    Petitioner was sentenced to an indeterminate term of 26 years to life. (Id.)

2         Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

3    District on June 9, 2010. (Lodged Docs. 43-45.) The appeal was denied on May 6, 2011.

4    (Answer, Ex. A.) On May 5, 2011, Petitioner filed a petition for review with the California

5    Supreme Court. (Lodged Doc. 46.) The petition was summarily denied on August 10,

6    2011. (Id.)

7         Petitioner proceeded to file ten petitions for writ of habeas corpus with the

8    California courts during the period between July 2011 and February 2013. (Lodged

9    Docs. 47-56.) All of the petitions were denied. (Id.)

10        Petitioner filed his federal habeas petition on March 22, 2013. (Pet., ECF No. 1.)

11   The petition raised three claims for relief, listed as follows:

12        1.) That trial counsel provided ineffective assistance of counsel by failing to

13        communicate a plea offer to Petitioner;

14        2.) That the prosecution was vindictive in pursuing more serious charges after

15        Petitioner exercised his right to appeal; and

16        3.) That the state violated Petitioner's federal constitutional right based on

17   providing the jury improper jury instructions regarding the element of implied malice.

18   (Pet. at 5-8, ECF No. 1.)

19        Respondent filed an answer to the petition on June 14, 2013. (Answer, ECF No.

20   12.) Petitioner filed a traverse on July 10, 2013. (ECF No. 14.) The matter stands ready

21   for adjudication.

22   **II.    STATEMENT OF THE FACTS[1]**

23        When correctional officers came to the cell shared by defendant
     and Fredrick Lewis to take them to the showers, Lewis backed up to the
24   cell door, put his hands through the food port, and was handcuffed.
     Defendant then struck Lewis multiple times. The correctional officers used
25   pepper spray to subdue defendant. Lewis sustained two injuries to his
     head that required sutures.
26

27   _____
          [1] The Fifth District Court of Appeal's summary of the facts in its May 6, 2011 opinion is presumed
28   correct.  28 U.S.C. § 2254(e)(1).

Defendant was charged by complaint with one count of assault with a deadly weapon or by force likely to produce great bodily injury while confined in a state prison (Pen Code, § 4501).[2] Pursuant to a plea bargain, he entered a no contest plea and was sentenced to the lower term of 2 years in prison, consecutive to the term he was already serving. Defendant appealed, and the judgment was reversed on the ground the trial court failed to advise him of his constitutional rights pursuant to <u>Boykin</u>/<u>Tahl</u>[3] before accepting his plea. The case was remanded, "with the original allegations 'restored to the superior court calendar [citations] to be tried or disposed of in some other appropriate manner.'" At the subsequent preliminary hearing, the trial court held defendant to answer for the charge alleged in the original complaint (violation of § 4501) and for a violation of section 4500, assault with a deadly weapon or by force likely to produce great bodily injury, with malice aforethought, by a prisoner undergoing a life sentence. The People filed an information charging defendant with both offenses, as well as enhancements not previously alleged.

Defendant unsuccessfully moved to dismiss the information for vindictive and retaliatory prosecution, asserting a presumption of prosecutorial vindictiveness arose because the increased charges and potential punishment were apparently a response to defendant's exercise of his right to appeal the original judgment. At trial, defendant stipulated that, at the time of the alleged offense, he was serving a life sentence. The jury convicted defendant of the new charge (§ 4500) and acquitted him of the original charge (§ 4501). The court imposed a sentence of life imprisonment without the possibility of parole for a minimum of 9 years, doubled to 18 years pursuant to section 667, subdivisions (b) through (i), plus 8 consecutive years for enhancements.

<u>People v. Matthews</u>, 2011 Cal. App. Unpub. LEXIS 3406, 2-4 (Cal. App. 5th Dist. May 6, 2011).

## II.   DISCUSSION

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Kings County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.
[3] <u>Boykin v. Alabama</u> (1969) 395 U.S. 238 (<u>Boykin</u>); <u>In re Tahl</u> (1969) 1 Cal.3d 122 (<u>Tahl</u>).

1  has jurisdiction over the action.

2  **B.  Legal Standard of Review**

3  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

4  Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

5  filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood,

6  114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

7  the AEDPA; thus, it is governed by its provisions.

8  Under AEDPA, an application for a writ of habeas corpus by a person in custody

9  under a judgment of a state court may be granted only for violations of the Constitution

10  or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.

11  7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

12  state court proceedings if the state court's adjudication of the claim:

13
14  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

15
16  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

17  28 U.S.C. § 2254(d).

18  1.  Contrary to or an Unreasonable Application of Federal Law

19  A state court decision is "contrary to" federal law if it "applies a rule that

20  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

21  that are materially indistinguishable from" a Supreme Court case, yet reaches a different

22  result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.

23  "AEDPA does not require state and federal courts to wait for some nearly identical

24  factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

25  even a general standard may be applied in an unreasonable manner" Panetti v.

26  Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

27  "clearly established Federal law" requirement "does not demand more than a 'principle'

28  or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state

1   decision to be an unreasonable application of clearly established federal law under §

2   2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

3   (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

4   71 (2003).  A state court decision will involve an "unreasonable application of" federal

5   law only if it is "objectively unreasonable."  Id. at 75-76, quoting Williams, 529 U.S. at

6   409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

7   Court further stresses that "an *unreasonable* application of federal law is different from

8   an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529

9   U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

10  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

11  correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541

12  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

13  have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

14  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

15  Federal law for a state court to decline to apply a specific legal rule that has not been

16  squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

17  (2009), quoted by Richter, 131 S. Ct. at 786.

18               2.     Review of State Decisions

19        "Where there has been one reasoned state judgment rejecting a federal claim,

20  later unexplained orders upholding that judgment or rejecting the claim rest on the same

21  grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

22  "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

23  (9th Cir. 2006).   Determining whether a state court's decision resulted from an

24  unreasonable legal or factual conclusion, "does not require that there be an opinion from

25  the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

26  "Where a state court's decision is unaccompanied by an explanation, the habeas

27  petitioner's burden still must be met by showing there was no reasonable basis for the

28  state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does

1  not require a state court to give reasons before its decision can be deemed to have been

2  'adjudicated on the merits.'").

3        Richter instructs that whether the state court decision is reasoned and explained,

4  or merely a summary denial, the approach to evaluating unreasonableness under §

5  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

6  or theories supported or, as here, could have supported, the state court's decision; then

7  it must ask whether it is possible fairminded jurists could disagree that those arguments

8  or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

9  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

10  was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

11  authority to issue the writ in cases where there is no possibility fairminded jurists could

12  disagree that the state court's decision conflicts with this Court's precedents." Id.  To put

13  it yet another way:

14          As a condition for obtaining habeas corpus relief from a federal
    court, a state prisoner must show that the state court's ruling on the claim
15      being presented in federal court was so lacking in justification that there
    was an error well understood and comprehended in existing law beyond
16      any possibility for fairminded disagreement.

17  Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

18  are the principal forum for asserting constitutional challenges to state convictions." Id. at

19  787. It follows from this consideration that § 2254(d) "complements the exhaustion

20  requirement and the doctrine of procedural bar to ensure that state proceedings are the

21  central process, not just a preliminary step for later federal habeas proceedings." Id.

22  (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

23                 3.    Prejudicial Impact of Constitutional Error

24        The prejudicial impact of any constitutional error is assessed by asking whether

25  the error had "a substantial and injurious effect or influence in determining the jury's

26  verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

27  U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

28  state court recognized the error and reviewed it for harmlessness).  Some constitutional

1    errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v.

2    Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

3    (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

4    assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

5    Strickland prejudice standard is applied and courts do not engage in a separate analysis

6    applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

7    v. Lamarque, 555 F.3d at 834.

8    **III.**    **REVIEW OF PETITION**

9        **A.    Claim One: Ineffective Assistance of Counsel**

10       In his first claim, Petitioner contends that trial counsel was ineffective for failing to

11   convey a plea offer to Petitioner. (See Pet. at 7.)

12           1.    State Court Decision

13       Petitioner first presented this claim by way of a petition for writ of habeas corpus

14   to the Kings County Superior Court. (Lodged Doc. 54.) Petitioner next presented his

15   claim of ineffective assistance of counsel to the California Court of Appeal, Fifth

16   Appellate District and the California Supreme Court. (Lodged Docs. 55-56). The claim

17   was denied summarily denied by both courts. (Id.) Since the California Supreme Court

18   denied the petition in a summary manner, this Court "looks through" the decisions and

19   presumes the California Supreme Court adopted the reasoning of the Superior Court,

20   the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501

21   U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through"

22   presumption that higher court agrees with lower court's reasoning where former affirms

23   latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir.

24   2000) (holding federal courts look to last reasoned state court opinion in determining

25   whether state court's rejection of petitioner's claims was contrary to or an unreasonable

26   application of federal law under 28 U.S.C. § 2254(d)(1)).

27       In denying Petitioner's claim, the Kings County Superior Court explained:

28           As to Petitioner's assertions of ineffective assistance of counsel

7

against Mr. Stover based on his alleged failure to inform him about a supposed November 1, 2007 postremittitur plea offer of 12 years, the court has reviewed the transcript for the November 1, 2007 hearing. The transcript confirms that on November 1, 2007, Mr. Stover rejected on behalf of a non-appearing Petitioner, an offer for resolution of Case No. 06CM7067. The details of the offer are not included in the transcript because the offer for resolution appears to have actually been extended during a prior hearing at which Petitioner appeared. Mr. Stover stated on the record during the November 1, 2007 hearing that he had fully discussed with Petitioner both the plea offer and the implications an amendment to the complaint by the People would have on upon Petitioner's potential sentence in the case. It further appears that Petitioner's nonappearance at the November 1, 2007 [hearing] was as a result of returned transport at the hands of the California Department of Corrections and Rehabilitation personnel and not some action or inaction on the part of Mr. Stover or the People.

In regards to whether Mr. Stover's alleged error was prejudicial to Petitioner, the court notes that it appears from the record that Petitioner at least twice rejected later extended offers for resolution of less than 12 years. (See, Transcript for April 30, 2008, 303:4-304:1; Transcript for November 25, 2008, 1002:25-1003:6.) To prevail on a claim of ineffective assistance of counsel, Petitioner must not only demonstrate by a preponderance of the evidence that counsel's representation was deficient, but must also establish that *counsel's deficient representation subjected the petitioner to prejudice*, "i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the petitioner." (Emphasis added; In re Jones (1996) 13 Cal.4th 552, 561; People v. Plager (1987) 196 Cal. App. 3d 1537, 1542-1543; see also, Strickland v. Washington (1984) 466 U.S. 668, 691 [an error by counsel, even if professionally unreasonable, does not warrant setting aside a judgment in a criminal proceeding if the error had not effect upon the judgment].) Here, the transcripts cited above conclusively undermine Petitioner's claim that he would have accepted the 12-year plea deal if informed of the same. Accordingly, prejudice has not been shown to exist.

(Answer, Ex. B at 2-3.)

2.    Law Applicable to Ineffective Assistance of Counsel Claims

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

8

1  Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell

2  below an objective standard of reasonableness, and must identify counsel's alleged acts

3  or omissions that were not the result of reasonable professional judgment considering

4  the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

5  (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court

6  indulges a strong presumption that counsel's conduct falls within the wide range of

7  reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v.

8  Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

9       Second, the petitioner must demonstrate that "there is a reasonable probability

10  that, but for counsel's unprofessional errors, the result ... would have been different,"

11  Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so

12  egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 687.

13  The Court must evaluate whether the entire trial was fundamentally unfair or unreliable

14  because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United

15  States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

16       A court need not determine whether counsel's performance was deficient before

17  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

18  Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any

19  deficiency that does not result in prejudice must necessarily fail. However, there are

20  certain instances which are legally presumed to result in prejudice, e.g., where there has

21  been an actual or constructive denial of the assistance of counsel or where the State has

22  interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659,

23  and n.25 (1984).

24       As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the

25  standard for ineffective assistance of counsel in federal habeas is extremely difficult:

26       The pivotal question is whether the state court's application of the
    Strickland standard was unreasonable. This is different from asking
27  whether defense counsel's performance fell below Strickland's standard.
    Were that the inquiry, the analysis would be no different than if, for
28  example, this Court were adjudicating a Strickland claim on direct review

1

2

3

4

of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Williams</u>, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

5

6

7

8

9

10

 A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid.</u> "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

11 <u>Harrington v. Richter</u>, 131 S. Ct. at 785-86.

12  "It bears repeating that even a strong case for relief does not mean the state

13 court's contrary conclusion was unreasonable." <u>Id.</u> at 786. "As amended by AEDPA, §

14 2254(d) stops short of imposing a complete bar on federal court relitigation of claims

15 already rejected in state proceedings." <u>Id.</u> "As a condition for obtaining habeas corpus

16 from a federal court, a state prisoner must show that the state court's ruling on the claim

17 being presented in federal court was so lacking in justification that there was an error

18 well understood and comprehended in existing law beyond any possibility for fairminded

19 disagreement." <u>Id.</u> at 786-87.

20  Here, Petitioner claims ineffective assistance with regard to a plea bargain offer.

21 The two-part test of <u>Strickland</u> applies to counsel's ineffective assistance in advising a

22 defendant to accept or reject a plea offer. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-58, 106

23 S. Ct. 366, 88 L. Ed. 2d 203 (1985); <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1051-53 (9th Cir.

24 2003) (rejecting attempt to limit <u>Hill</u> to acceptance of plea offer). In light of the complexity

25 and uncertainties that attend plea bargaining, it is especially essential that the habeas

26 court respect the latitude for counsel's judgment that <u>Strickland</u> requires. <u>See</u> <u>Premo v.</u>

27 <u>Moore</u>, 131 S. Ct. 733, 741, 178 L. Ed. 2d 649 (2011) (9th Circuit erred in concluding

28 trial counsel engaged in deficient performance by not moving to exclude a confession

1    before advising client to take a plea bargain early in the proceedings).

2        The first Strickland prong requires the petitioner to establish that counsel's advice

3    was deficient, meaning it was not "'within the range of competence demanded of

4    attorneys in criminal cases.'" Hill, 474 U.S. at 56 (quoting McMann v. Richardson, 397

5    U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). As to the second Strickland

6    prong, i.e., the prejudice prong, the court must give the deference owed in light of the

7    uncertainty inherent in plea negotiations. See Premo, 131 S. Ct. at 743-44. To establish

8    prejudice from counsel's advice to reject a plea offer, petitioner must show that there is a

9    reasonable probability that, but for counsel's errors, "the plea offer would have been

10   presented to the court (i.e., that the defendant would have accepted the plea and the

11   prosecution would not have withdrawn it in light of intervening circumstances), that the

12   court would have accepted its terms, and that the conviction or sentence, or both, under

13   the offer's terms would have been less severe than under the judgment and sentence

14   that in fact were imposed." Lafler v. Cooper, 132 S. Ct. 1376, 1385, 182 L. Ed. 2d 398

15   (2012).

16            3.    Analysis

17       Assuming that counsel failed to communicate the plea offer to Petitioner and that

18   counsel's actions were objectively unreasonable, Petitioner fails to show that he was

19   prejudiced by it. See Strickland, 466 U.S. at 697. The state court conducted a thorough

20   review of the record to determine what transpired with respect to the subject plea offer

21   and subsequent plea offers. The record shows that regardless of whether  the plea offer

22   in question was communicated to Petitioner by counsel, he turned down subsequent and

23   more favorable plea offers. (See Lodged Docs. 12, 29.) Based on this record, the state

24   court found that the was no reasonable possibility that Petitioner would have taken the

25   subject plea offer. Petitioner has failed to show that the result of the proceeding would

26   have been different but for retained counsel's allegedly deficient conduct. See Strickland,

27   466 U.S. at 694. Accordingly, the state court's rejection of this claim was not contrary to,

28   or an unreasonable application of, clearly established Supreme Court precedent, nor

1    was it based on an unreasonable determination of the facts in light of the evidence

2    presented. 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief on this

3    claim.

4         **B.    Claim Two: Vindictive Prosecution Claim**

5         Petitioner next contends that the prosecution was vindictive in pursuing more

6    serious charges after he exercised his right to appeal.

7              1.    State Court Decision

8         Petitioner presented this claim by way of direct appeal to the California Court of

9    Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

10   appellate court and summarily denied in subsequent petition for review by the California

11   Supreme Court. (See Answer, Ex. A.) Because the California Supreme Court's opinion is

12   summary in nature, this Court "looks through" that decision and presumes it adopted the

13   reasoning of the California Court of Appeal, the last state court to have issued a

14   reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991)

15   (establishing, on habeas review, "look through" presumption that higher court agrees

16   with lower court's reasoning where former affirms latter without discussion); see also

17   LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look

18   to last reasoned state court opinion in determining whether state court's rejection of

19   petitioner's claims was contrary to or an unreasonable application of federal law under

20   28 U.S.C. § 2254(d)(1)).

21        In denying Petitioner's claim, the California Court of Appeal explained:

22   I. Vindictive Prosecution

23        In North Carolina v. Pearce (1969) 395 U.S. 711,[4] the court
     concluded judicial vindictiveness in sentencing violates due process. "Due
24   process of law, then, requires that vindictiveness against a defendant for
     having successfully attacked his first conviction must play no part in the
25   sentence he receives after a new trial. And since the fear of such
     vindictiveness may unconstitutionally deter a defendant's exercise of the
26   right to appeal or collaterally attack his first conviction, due process also

27   _____

     [4] North Carolina v. Pearce, supra, 395 U.S. 711, overruled in part on other grounds in Alabama v.
28   Smith (1989) 490 U.S. 794.

requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." (Id. at p. 725, fn. omitted.) To ensure the absence of a retaliatory motivation, objective reasons for imposing a more severe sentence after retrial must appear in the record. (Id. at p. 726.)

The prohibition against vindictiveness has been extended to actions of the prosecutor. "The constitutional protection against prosecutorial vindictiveness is based on the fundamental notion that it 'would be patently unconstitutional' to 'chill the assertion of constitutional rights by penalizing those who choose to exercise them.' [Citation.]" (In re Bower (1985) 38 Cal.3d 865, 873 (Bower).) In Blackledge v. Perry (1974) 417 U.S. 21 (Perry), the defendant was convicted of a misdemeanor and appealed, which entitled him to a trial de novo in superior court. Before the trial de novo began, the prosecutor obtained an indictment charging the defendant with a felony based on the same occurrence. The defendant pled guilty to the felony and received a more severe sentence. The defendant contended the felony charge penalized him for exercising his statutory right to appeal, in violation of the due process clause of the Fourteenth Amendment. (Perry, supra, at p. 25.)

The court concluded "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.' ... [¶] A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial de novo in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals — by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy — the State can insure that only the most hardy defendants will brave the hazards of a de novo trial." (Perry, supra, 417 U.S. at pp. 27-28.) The court held "it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial de novo." (Id. at pp. 28-29.)

The court noted that an actual bad faith or retaliatory motive on the part of the prosecutor was not necessary; a convicted defendant was protected against the fear of vindictiveness that might unconstitutionally deter his exercise of the right to appeal. (Perry, supra, 417 U.S. at p. 28.) "A person convicted of an offense is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." (Id. at p. 28, fn. omitted.)

In United States v. Goodwin (1982) 457 U.S. 368 (Goodwin), the court described Pearce, supra, 395 U.S. 711 as applying a presumption of vindictiveness when the trial court imposed a more severe penalty after a retrial, which could only be overcome if the trial court's reasons for doing so, supported by ""objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding,"" appeared in the record. (Id. at pp. 373-374.) It

described <u>Perry</u> as applying a presumption of prosecutorial vindictiveness when the prosecutor upped the ante by increasing the severity of the charges and the potential punishment on retrial. (<u>Goodwin</u>, supra, at pp. 375-376.) Both cases, the court noted, "involved the defendant's exercise of a procedural right that caused a complete retrial after he had been once tried and convicted." (<u>Id.</u> at p. 376.) They reflected "a recognition by the Court of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided." (<u>Ibid.</u>) That same institutional bias "might also subconsciously motivate a vindictive prosecutorial or judicial response to a defendant's exercise of his right to obtain a retrial of a decided question." (<u>Id.</u> at p.377.)

The California Supreme Court has used the same reasoning to apply a presumption of vindictiveness where the prosecution increased the severity of the charges against the defendant after a mistrial and before retrial. In <u>Twiggs v. Superior Court</u> (1983) 34 Cal.3d 360, the defendant's first trial resulted in a hung jury and the trial court declared a mistrial. Prior to the retrial, the defendant rejected the prosecutor's plea offer and the prosecutor was permitted to amend the information to add allegations of several prior convictions. The prosecutor apparently had not investigated the defendant's prior convictions and did not learn of them until the prosecutor in another proceeding against the defendant showed her the defendant's prison records. The court stated: "The same considerations that led the high court to condemn such prosecutorial conduct in the context of a postconviction appeal are applicable when the defendant asserts his right to a retrial after a mistrial. As a prosecutor would have a considerable stake in discouraging appeals requiring trials de novo, so too would the prosecution in a case such as this have a great interest in discouraging defendant's assertion of a retrial, particularly since the prosecution was unable to obtain a conviction in the first trial." (<u>Id.</u> at p. 369.) The court invoked the presumption of vindictive prosecution "to protect against both the possibility that defendant will be deterred from exercising a legal right, as well as the danger that the state might be retaliating against the defendant for maintaining his innocence and facing a retrial." (<u>Id.</u> at p. 370.)

In <u>Bower</u>, the defendant and McClure were charged with murder. McClure was tried first and convicted of second degree murder. (<u>Bower</u>, supra, 38 Cal.3d at p. 870.) The prosecutor and Bower's attorney stipulated that Bower's liability would be limited to second degree murder. When his trial was almost over, Bower was granted a mistrial after a witness revealed Bower's parole status. On retrial, the prosecutor refused to stipulate to limit Bower's liability to second degree murder. (<u>Id.</u> at p. 871.) Between the trials, he had reviewed the physical evidence, discussed the case with the witnesses, and concluded that Bower had fired the fatal shot, and not McClure, as previously believed. The prosecutor called the same witnesses and presented the same evidence at the second trial, and Bower was convicted of first degree murder. (<u>Ibid.</u>) The court applied a presumption of prosecutorial vindictiveness.

"These circumstances present a reasonable likelihood of vindictiveness. The prosecution has an obvious institutional interest in avoiding the duplication of effort and increased expenditure of resources attendant on the retrial of such a case. The presumption of vindictiveness protects against the danger that such institutional pressures might

14

subconsciously motivate a vindictive prosecutorial response to a defendant's motion for mistrial made at this late stage of the proceedings. [Citations.] The presumption also aims to free the defendant of the apprehension that the exercise of a right designed to guarantee that his or her trial is fair will be met with a retaliatory increase in the charge and potential period of incarceration to which he or she is subjected. [Citation.] Regardless of the actual motive of the individual prosecutor, a judicial process which permitted the prosecution to increase the charges against a defendant who successfully exercised a constitutional or procedural right at trial would have a chilling effect upon the assertion of those rights and could undermine the integrity of the entire proceeding." (Bower, supra, 38 Cal.3d at pp. 877-878.)

In Goodwin, supra, 475 U.S. 368 and in Bordenkircher v. Hayes (1978) 434 U.S. 357 (Bordenkircher), the court concluded the presumption of vindictiveness did not apply in the context of pretrial plea negotiations. In Bordenkircher, during plea negotiations, the prosecutor threatened to bring additional charges against the defendant if he did not plead guilty to the offense already charged. The defendant refused to plead guilty and the prosecutor obtained an indictment on more serious charges. The court found no due process violation.

"In [Pearce and Perry] the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction — a situation 'very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power.' [Citation.] The Court has emphasized that the due process violation in cases such as Pearce and Perry lay not in the possibility that a defendant might be deterred from the exercise of a legal right [citations], but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction. [Citation.] [¶] To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort ... [citation], and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' [Citations.] But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." (Bordenkircher, supra, 434 U.S. at pp. 362-363.)

Goodwin explained further:

"There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the

prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins — and certainly by the time a conviction has been obtained — it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." (Goodwin, supra, 457 U.S. at p. 381.)

The presumption also does not apply in other pretrial contexts. In People v. Farrow (1982) 133 Cal.App.3d 147 (Farrow), the defendant was charged by information with one felony count. The case was dismissed on the defendant's motion when it was not brought to trial within 60 days. The prosecutor immediately filed a new complaint, alleging two felony counts. The court rejected the defendant's argument that the added count should have been dismissed based on vindictive prosecution, distinguishing Perry. "This case does not involve an asserted retaliation for a successful appeal of a conviction. Appellant was not convicted, indeed he was never in jeopardy, in the first case. Neither the United States Supreme Court nor the California courts have extended Perry beyond the context of alleged retaliation for a postconviction appeal." (Farrow, supra, at p. 152.) The court concluded the Perry rule would be "unworkable" if not limited to the postconviction appeal context. (Farrow, supra, at p. 152.)

"Prosecutorial discretion in determining the charges to be filed is basic to the framework of our criminal justice system. [Citations.] Up to the time of verdict, the prosecution may amend the information to include additional offenses shown by the evidence at the preliminary hearing. To extend Perry to the pretrial and trial context would unduly hamper the legitimate exercise of this prosecutorial discretion. From the very commencement of proceedings, a criminal defendant has innumerable 'rights' which are exercised prior to and during the trial. Whenever the prosecution attempted to amend the information, the defendant could assert that the amendment was really in retaliation for some right that the defendant had theretofore exercised, or attempted to exercise. If the assertion of such a claim required the prosecution to come forward with explanations of the motivations for exercise of its discretion to amend the charges, the defendant could delay the proceedings and deflect them from the true issue, the defendant's guilt or innocence." (Farrow, supra, 133 Cal.App.3d at p. 152.)

In People v. Bracey (1994) 21 Cal.App.4th 1532 (Bracey), the defendant committed a new offense while on probation. The prosecutor filed felony charges; while probation revocation proceedings were pending, he dismissed the new case. When the probation revocation proceedings did not result in a prison commitment, the prosecutor refiled the felony charges. The court concluded the refiling did not give rise to a presumption of vindictive prosecution.

"Pearce and Perry dealt with postconviction action by the state in response to the defendant's exercise of statutory

16

rights. The central notion underlying the rule of those cases is that a person who has suffered a conviction should be free to exercise his right to appeal, or seek a trial de novo, without apprehension that the state will retaliate by 'upping the ante' with more serious charges or a potentially greater sentence. [Citation.]" (Bracey, supra, 21 Cal.App.4th at p. 1543.)

Noting that California has also refused to apply a presumption of vindictiveness to conduct that occurred before commencement of trial, the court concluded the presumption did not apply. (Bracey, supra, 21 Cal.App.4th at p. 1544.) First, the defendant had not exercised a constitutional or statutory right to which the prosecution was a retaliatory response. (Id. at p. 1546.) Second, the prosecutor had not "upped the ante" by filing more serious charges than those originally filed. (Id. at p. 1547.) Third, the trial court failed to recognize that the probation revocation proceeding and the new criminal proceeding were separate proceedings, each following its own procedural track. (Id. at p. 1548.) To preclude a criminal prosecution based on the result of a revocation hearing "would be an improper judicial interference 'with the executive branch, charged with insuring that the laws of this state in the prosecution of offenses be faithfully executed.' [Citations.]" (Id. at p. 1549.)

In People v. Hudson (1989) 210 Cal.App.3d 784 (Hudson), the court concluded the presumption of vindictiveness did not apply after the withdrawal of a guilty plea. The defendant pled guilty to misdemeanor charges, not as a result of a plea bargain. (Id. at pp. 785, 788.) At the sentencing hearing, she asserted her innocence and was permitted to withdraw her guilty plea. (Id. at p. 785.) The prosecutor filed amended complaints and informations which included two felony charges. The defendant moved to dismiss, asserting prosecutorial vindictiveness in response to her exercise of her right to a jury trial. (Id. at p. 786.) The court found the situation more akin to Goodwin than to Pearce or Perry, because it did not address a postconviction increase in the charges. (Hudson, supra, at pp. 787-788.) The court reasoned:\

"Although this sequence of events may give rise to an appearance of vindictiveness, we hold it was insufficient to warrant the application of a presumption that the more serious charges were filed in retaliation for respondent's exercise of her constitutional rights. As in the cases involving pretrial situations, for this court to hold otherwise would significantly abridge prosecutorial charging discretion in a fashion inconsistent with statutory authority.

"Our decision is also consistent with the policy reasons underlying the distinction between those cases where the presumption has been applied and those cases where its application has been rejected. Unlike Pearce and Perry, the prosecution here had expended no resources to try respondent already, and therefore had a lesser institutional interest in discouraging respondent's exercise of her right to a trial by jury. And while in this case respondent was apparently not aware that more serious charges could be filed against her if she withdrew her plea, the prosecution, unlike cases involving plea bargains, made no promises or

representations that specific crimes would or would not be charged as a result of her plea or lack thereof." (<u>Hudson</u>, supra, 210 Cal.App.3d at pp. 788-789.)

As <u>Bower</u> indicated, the timing of the increase in the charges is important in determining whether the presumption of vindictiveness applies. (<u>Bower</u>, supra, 38 Cal.3d at pp. 875-876.) Although the cases variously state that the presumption applies after trial, after conviction, or after attachment of jeopardy, in the cases applying the presumption, the increase in the severity of the charges occurred after the matter had been fully tried once or after the first trial had begun, jeopardy had attached, and substantial evidence had been presented. Where trial has commenced or been completed, the rationale for the presumption of vindictiveness applies. The state has invested time and effort into the prosecution and trial of the case. It will require additional expenditures of prosecutorial resources to retry the defendant and there is a risk the defendant may be acquitted. As a result, there is "a realistic likelihood" (<u>Perry</u>, supra, 417 U.S. at p. 27) that the "institutional bias inherent in the judicial system against the retrial of issues that have already been decided" might "subconsciously motivate a vindictive prosecutorial ... response to a defendant's exercise of his right to obtain a retrial of a decided question." (<u>Goodwin</u>, supra, 457 U.S. at p. 376.)

The presumption of vindictiveness has been held not to arise in the pretrial setting. <u>Goodwin</u> explains the supporting rationale: "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in <u>Bordenkircher</u>, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." (<u>Goodwin</u>, supra, 457 U.S. at p. 382, fns. omitted.) Further, "[t]o presume that every case is complete at the time an initial charge is filed, however, is to presume that every prosecutor is infallible — an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources. Moreover, there are certain advantages in avoiding a rule that would compel prosecutors to attempt to place every conceivable charge against an individual on the public record from the outset." (<u>Id.</u> at p. 382, fn. 14.)

Defendant asserts the prosecutor retaliated against him for exercising his right to appeal. The prosecutor added a charge against defendant after defendant pled no contest to the original charge pursuant to a plea bargain, then successfully appealed his conviction. Although this case technically involves a postconviction and postappeal increase in the charges, it does not implicate the same considerations as the cases in which the charges were amended after trial.

Defendant's no contest plea was taken not only prior to commencement of trial, but also prior to the preliminary hearing. As in <u>Hudson</u>, "the prosecution here had expended no resources to try respondent already, and therefore had a lesser institutional interest in discouraging respondent's exercise of [his] right to a trial by jury." (<u>Hudson</u>, supra, 210 Cal.App.3d at pp. 788-789.) Further, it cannot be said that, at that early stage of the proceedings, "the prosecutor [was] likely to have discovered and assessed all of the information against the accused and to have made a determination of the extent to which he ... should be

prosecuted. (<u>Bower</u>, supra, 38 Cal.3d at p.880, fn. 7.) Ordinarily, the prosecutor may amend the pleading at any time prior to trial, whether because he discovers new or different facts, or because he reevaluates the significance of the known facts. (<u>See</u> <u>People v. Edwards</u> (1991) 54 Cal.3d 787, 827-828; <u>Bracey</u>, supra, 21 Cal.App.4th at p. 1547.) Here, after defendant's successful appeal, the court conducted a preliminary hearing and held defendant to answer on the charge contained in the complaint and on an additional charge. The prosecutor filed an information alleging both offenses. To preclude the prosecutor from changing or adding to the charges prior to trial, even at the preliminary hearing stage of the proceedings, would unduly hamper the legitimate exercise of prosecutorial charging discretion.

This case illustrates the need to preserve prosecutorial discretion during the pretrial period. Originally, defendant was charged with a violation of section 4501. Section 4501 provides:

"Except as provided in Section 4500, every person confined in a state prison of this state who commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury, shall be guilty of a felony and shall be imprisoned in the state prison for two, four, or six years to be served consecutively."

Section 4500 provides:

"Every person while undergoing a life sentence, who is sentenced to state prison within this state, and who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death or life imprisonment without possibility of parole."

Defendant was incarcerated for a life term at the time of the alleged assault, but a violation of section 4500 was not alleged initially. The complaint was filed on February 3, 2006, alleging the offense occurred on July 18, 2005. Prior to January 1, 2005, section 4501 provided:

"Every person confined in a state prison of this state *except one undergoing a life sentence* who commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury, shall be guilty of a felony and shall be imprisoned in the state prison for two, four, or six years to be served consecutively." (Stats. 1978, ch. 579, § 33, p. 1993, italics added.)

Thus, prior to the amendment that took effect on January 1, 2005, section 4501, by its terms, did not apply to a state prisoner undergoing a life sentence. After the amendment, section 4501 applied "[e]xcept as provided in Section 4500." Consequently, it would apply to prisoners not undergoing a life sentence, or to prisoners undergoing a life sentence who committed assault without malice aforethought.

The complaint against defendant alleged defendant committed a

19

"violation of Section 4501 of the Penal Code ... in that said defendant(s): did unlawfully and while confined in a state prison *serving less than a life term*, commit an assault upon Inmate Fredrick Lewis ... by means of force likely to produce great bodily injury." (Italics added.) Different prosecutors handled the matter before and after the reversal on appeal. During oral argument of defendant's motion to dismiss on the ground of vindictive prosecution, the second prosecutor, Kevin Cook, represented that his office was unaware of the amendment of section 4501 at the time the complaint against defendant was filed. After the reversal, he reviewed the file, including the police reports and the prison records, reevaluated the case, and concluded the charge filed was not the correct charge.

When Cook reviewed defendant's section 969b package and learned defendant was serving a life term, he believed the appropriate charge was under section 4500, with an alternative charge under section 4501. He viewed the change in the charges as merely correcting a mistake in the original complaint. At the preliminary hearing, he asked the court to hold defendant to answer for violations of both section 4500 and section 4501; the court did so. The prosecutor then filed an information charging defendant with violations of both sections, and adding enhancements under sections 12022.7, subdivision (a), and 667, subdivision (a)(1), which were not alleged in the complaint.

Because defendant's no contest plea and the reversal on appeal occurred prior to trial and prior to the preliminary hearing, and the additional charges were supported by evidence presented at the subsequent preliminary hearing, we conclude this case is analogous to the pretrial cases in which courts have held that the presumption of vindictive prosecution does not apply. The rationale underlying application of the presumption does not support application in this case. There was no "obvious institutional interest in avoiding the duplication of effort and increased expenditure of resources attendant on the retrial" of the case, because the case was not tried prior to the filing of the information that included counts for violation of both statutes. (Bower, supra, 38 Cal.3d at p. 877.) The circumstances do not present a "realistic likelihood of 'vindictiveness.'" (Perry, supra, 417 U.S. at p. 27.) Further, application of the presumption in this case "would significantly abridge prosecutorial charging discretion in a fashion inconsistent with statutory authority." (Hudson, supra, 210 Cal.App.3d at p. 788.) Accordingly, we find no error in the trial court's denial of defendant's motion to dismiss on grounds of vindictive prosecution.

People v. Matthews, 2011 Cal. App. Unpub. LEXIS 3406, 9-27 (Cal. App. 5th Dist. May 6, 2011).

> 2.    Relevant Law

The government violates a defendant's right to due process if it files criminal charges to penalize him for the exercise of a protected statutory or constitutional right. United States v. Goodwin, 457 U.S. 368, 372, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982). This rule follows from the principle that "[t]o punish a person because he has done what

1   the law plainly allows him to do is a due process violation 'of the most basic sort.'" Id.

2   (quoting Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604)). A

3   presumption of vindictiveness arises, and must be overcome by objective information in

4   the record, where a more severe sentence is imposed upon retrial. North Carolina v.

5   Pearce, 395 U.S. 711, 726, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (retrial following

6   reversal on appeal); Blackledge v. Perry, 417 U.S. 21, 27, 94 S. Ct. 2098, 40 L. Ed. 2d

7   628 (1974) (retrial as a matter of right in a superior trial court).

8        However, "so long as the prosecutor has probable cause to believe that the

9   accused committed an offense defined by statute, the decision whether or not to

10   prosecute, and what charge to file . . . generally rests entirely in his discretion."

11   Bordenkircher, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). A prosecutor

12   may properly threaten to reindict an accused on more serious charges if the accused

13   refuses to plead guilty to the offense originally charged. Id. at 358-64. "[A] prosecutor

14   may [also] file additional charges if an initial expectation that a defendant would plead

15   guilty to lesser charges proves unfounded." United States v. Goodwin, 457 U.S. 368,

16   380, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982). In such cases, the prosecutor may have

17   initially elected to forgo legitimate charges in an effort to save time and money. Id. Also,

18   "[i]n the course of preparing a case for trial, the prosecutor may uncover additional

19   information that suggests a basis for further prosecution or he simply may come to

20   realize that information possessed by the State has a broader significance." Id. at 381.

21        3.   Analysis

22        Petitioner claims that the prosecution vindictively filed greater charges against him

23   because he exercised a legal right and appealed the judgment on his plea offer. It is

24   undisputed that Petitioner was initially charged with aggravated assault by a prisoner

25   under Cal. Penal Code § 4501, a lesser offense than aggravated assault by a life

26   prisoner under Cal. Penal Code § 4500, which carries stronger penalties.[5] Given the

27

28           [5] A conviction under Cal. Penal Code § 4501 is punishable for a term of two, four, or six years whereas a conviction under Cal. Penal Code § 4500 is punishable for a term of life without the possibility

(continued…)

1  imposition of the greater offense, the Court will assume, for the sake of argument, a

2  presumption of vindictiveness which must be overcome by objective information in the

3  record. <u>North Carolina v. Pearce</u>, 395 U.S. at 726. Such evidence does not implicate

4  vindictiveness on the part of the prosecution. As the state court explained, the

5  prosecutor who took over the case after the successful appeal of the plea bargain

6  conviction believed that Petitioner was wrongfully charged with the lesser offense, and

7  that the alternative charge was appropriate. The state court found that the prosecutor did

8  not change the charges because of Petitioner's appeal, but instead was "merely

9  correcting a mistake in the original complaint." <u>People v. Matthews</u>, 2011 Cal. App.

10  Unpub. LEXIS 3406 at 9-27.

11      Having found that the original matter had resolved itself before trial and even

12  before the preliminary hearing, that the new charges were appropriate to the facts in

13  evidence, and that the case involved no duplication of effort or increased expenditure by

14  the state such as appears in cases involving retrial of a defendant, the state court found

15  the presumption of vindictiveness did not apply. (<u>Id.</u>)

16      The state court's determination of the issue was not an unreasonable

17  determination of federal law. As discussed, there is a significant distinction between a

18  conviction that is a result of a plea bargain and one that is the result of trial. In accepting

19  a plea bargain, a petitioner obtains a reduction of the potential sentence in exchange for

20  waiving trial rights. It is without question that the offer Petitioner originally accepted was

21  significantly shorter than the maximum possible punishment available, and that he had

22  no reasonable expectation that he would receive the same or better plea offer after

23  successfully overturning the conviction on appeal.  While Petitioner ultimately received a

24  greater sentence on appeal, he had not previously been sentenced because he had

25  decided to accept the prosecution's offer and avoid trial altogether. As Petitioner was not

26  give a more severe sentence upon retrial, the state court was reasonable in finding that

27  _____

    (…continued)

28  of parole for nine years.

1   no presumption of vindictiveness arose. <u>North Carolina v. Pearce</u>, 395 U.S. at 726.

2       Petitioner does not challenge the fact that he is serving a life sentence. The Court

3   finds the reasoning of the state court persuasive. There was no reason why the

4   prosecution originally charged Petitioner for the offense that applied to non-life prisoners

5   when Petitioner was sentenced to a life term. The state court's explanation that the initial

6   charges were mistakenly made by the original prosecutor is reasonable and does not

7   create an inference of vindictiveness on the part of the prosecution.

8       Based on the foregoing, the Court finds that the California court's rejection of

9   Petitioner's claim was neither contrary to, nor involved an unreasonable application of,

10  clearly established federal law, as determined by the United States Supreme Court.

11  Thus, habeas relief is not warranted on this claim.

12      **C.    Claim Three: Instructional Error**

13      In his third claim, Petitioner asserts that his federal constitutional rights were

14  violated due to improper jury instructions regarding the element of implied malice.

15              1.    <u>State Court Decision</u>

16      Petitioner presented this claim by way of direct appeal to the California Court of

17  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

18  appellate court and summarily denied in subsequent petition for review by the California

19  Supreme Court. (<u>See</u> Answer, Ex. A.) Accordingly, this Court "looks through" and

20  presumes the California Supreme Court adopted the last state court to have issued a

21  reasoned opinion. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804-05 & n.3 (1991).

22      In denying Petitioner's claim, the California Court of Appeal explained:

23      II. <u>Malice Aforethought</u>

24          Defendant contends it was error for the trial court to instruct the jury
        on implied malice; he argues the specific intent requirement of section
25      4500 cannot be satisfied by implied malice. He asserts a violation of
        section 4500, like assault with intent to commit murder or attempted
26      murder, requires a specific intent to kill, a mental state which is
        inconsistent with implied malice.
27
            Section 4500 proscribes "assault upon the person of another with a
28      deadly weapon or instrument, or by any means of force likely to produce

great bodily injury," when committed by a life-term inmate with malice aforethought. It does not prohibit assault with intent to commit murder or attempted murder. The crimes of assault with intent to commit murder and attempted murder "require a specific intent to kill a human being — an intent which can never be replaced by implied malice." (People v. Coleman (1989) 48 Cal.3d 112, 142.) Assault and assault with a deadly weapon, in contrast, are general intent crimes; they do not require a specific intent to injure. (People v. Colantuono (1994) 7 Cal.4th 206, 213; People v. Williams (2001) 26 Cal.4th 779, 788, 790.) The assault offense defined in section 4500 requires the specific intent of malice aforethought. (People v. Jeter (2005) 125 Cal.App.4th 1212, 1217 (Jeter).)

"The words malice aforethought in section 4500 have the same meaning as in sections 187 and 188. [Citations.] Thus the rules that have evolved regarding malice aforethought as an element in a charge of murder apply to section 4500." (People v. Chacon (1968) 69 Cal.2d 765, 781 (Chacon), disapproved on another ground in People v. Doolin (2009) 45 Cal.4th 390, 421, fn. 22.) "Malice, for the purpose of defining murder, may be express or implied." (People v. Nieto Benitez (1992) 4 Cal.4th 91, 102.) Under section 188, which defines malice aforethought for purposes of the murder statute, express malice is present "when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature." Malice is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188.) Juries are not instructed in the statutory language. "Doing so would provide the jury with little guidance. 'The statutory definition of implied malice has never proved of much assistance in defining the concept in concrete terms.' [Citation.] Accordingly, the statutory definition permits, even requires, judicial interpretation. We have interpreted implied malice as having 'both a physical and a mental component. The physical component is satisfied by the performance of "an act, the natural consequences of which are dangerous to life." [Citation.] The mental component is the requirement that the defendant "knows that his conduct endangers the life of another and ... acts with a conscious disregard for life." [Citation.]' [Citation.]" (People v. Chun (2009) 45 Cal.4th 1172, 1181.)

"Malice aforethought as used in section 4500 has the same meaning as it has for murder convictions, requiring either an intent to kill or 'knowledge of the danger to, and with conscious disregard for, human life.' [Citations.]" (Jeter, supra, 125 Cal.App.4th at p. 1216.) The jury instructions given were consistent with this definition of malice aforethought. The jury was instructed that a violation of section 4500 required "a specific intent or mental state," and the specific intent required would be explained in the instruction for that crime. (CALCRIM No. 252.) The jury was then instructed in the language of CALCRIM No. 2720, that defendant had been charged with "assault with force likely to produce great bodily injury with malice aforethought, while serving a life sentence in violation of Penal Code section 4500." The instruction set out the elements of the offense, including that "[t]he defendant acted with malice aforethought." It then defined malice aforethought:

"There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for this crime.

"The defendant acted with express malice if he unlawfully

24

intended to kill the person assaulted."

The defendant acted with implied malice if:

"1. He intentionally committed an act.

"2. The natural consequences of the act were dangerous to human life.

"3. At the time he acted, he knew his act was dangerous to human life.

AND

"4. He deliberately acted with conscious disregard for human life." (CALCRIM No. 2720.)

This definition of malice aforethought is almost identical to the definition of that term used in the jury instruction for murder. (CALCRIM No. 520.) Thus, in accordance with Chacon, the trial court defined malice aforethought for purposes of section 4500 using the same definition applicable in murder cases. The inclusion of a definition of implied malice was proper. We find no error in the jury instructions.

People v. Matthews, 2011 Cal. App. Unpub. LEXIS 3406, 27-31 (Cal. App. 5th Dist. May 6, 2011).

2.    Relevant Legal Standard

This Court's review of Petitioner's claim of state instructional error is "limited to deciding whether [his] conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); 28 U.S.C. § 2241. In order to grant federal habeas relief on the basis of faulty jury instructions, the Court must first conclude that the alleged error was of constitutional magnitude. See California v. Roy, 519 U.S. 2, 117 S. Ct. 337, 136 L. Ed. 2d 266 (1996).

In order to grant federal habeas relief on the basis of faulty jury instructions, the Court must conclude that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." Roy, 519 U.S. at 5; Brecht, 507 U.S. at 637. Federal habeas relief is warranted only if the Court, after reviewing the record, has "grave doubt" as to the error's effect. Stanton v. Benzler, 146 F.3d 726, 728 (9th Cir. 1998). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct

1    appeal." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203

2    (1977). The trial court's error in omitting a jury instruction is less likely to be prejudicial

3    than the trial court's misstatement of the law. Henderson, 431 U.S. at 155; see also

4    Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (habeas petitioner whose claim

5    involves a failure to give a particular instruction bears an especially heavy burden).

6           To evaluate the effect of jury instructions, the Court must look at the context of the

7    entire trial and overall charge to the jury. Estelle, 502 U.S. at 72; Prantil v. California, 843

8    F.2d 314, 317 (9th Cir. 1988). They may not be judged in artificial isolation. Estelle, 502

9    U.S. at 72. In addition, a reviewing court's principal constitutional inquiry is whether there

10   is a reasonable likelihood that the jury applied the challenged instructions in a way that

11   violates the Constitution. See id.

12          While a state is generally free to define the elements of an offense, once the state

13   has defined the elements, due process requires that the jury be instructed on each

14   element and instructed that they must find each element beyond a reasonable doubt.

15   Francis v. Franklin, 471 U.S. 307, 313, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985); In re

16   Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); United States v.

17   Perez, 116 F.3d 840, 847 (9th Cir. 1997); Stanton, 146 F.3d at 728.

18          It necessarily follows, therefore, that constitutional trial error occurs when a jury

19   makes a guilty determination on a charged offense without a finding as to each element

20   of the offense. According to the Supreme Court, a jury instruction that omits an element

21   of the offense constitutes such an error. Neder v. United States, 527 U.S. 1, 8, 119 S. Ct.

22   1827, 144 L. Ed. 2d 35 (1999). However, such an error "does not necessarily render a

23   criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or

24   innocence." Id. at 9. Provided that such an error occurred, Petitioner's conviction can

25   only be set aside if the error was not harmless under Chapman v. California, 386 U.S.

26   18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); Neder, 527 U.S. at 15. Under the Chapman

27   harmless error test, it must be determined "beyond a reasonable doubt" whether "the

28   error complained of did not contribute to the verdict obtained." Chapman, 386 U.S. at 24.

1   Here, Petitioner contends the trial court erred in instructing the jury with regard to

2   the crime. Petitioner asserts that the court improperly instructed the jurors with regard to

3   allowing a finding of implied malice.

4   The state court held that the instructions were correct. The court noted that for the

5   crimes of assault with intent to commit murder and attempted murder require a specific

6   intent to kill a human being, which is not proven by implied malice. People v. Matthews,

7   2011 Cal. App. Unpub. LEXIS 3406, 27-31 (Cal. App. 5th Dist. May 6, 2011) (citing

8   People v. Coleman (1989) 48 Cal.3d 112, 142.). However, the crime at issue here was

9   for assault with a deadly weapon by a life inmate under California Penal Code § 4500.

10  Cal. Penal Code § 4500 ("Every person while undergoing a life sentence… who, with

11  malice aforethought, commits an assault upon the person of another…") As such, it

12  appears to be a general intent crime, with the added element of proof of malice

13  aforethought, which can be proven by either express or implied malice. See CALCRIM

14  No. 2720. Had the state wanted the crime to require express malice, the language of the

15  criminal statute could have been drafted with language requiring the intent to kill or

16  cause great bodily injury. Instead the statute used the term malice aforethought, which

17  includes both express and implied malice.

18  Based on the plain meaning of the statute, the crime did not require a specific

19  intent to kill. Unlike the special circumstances surrounding the crimes of assault with

20  intent to commit murder and attempted murder, malice aforethought, whether express or

21  implied, was sufficient to prove the elements of this offense. Upon review, the state

22  court's holing was a reasonable application of federal law. Based on the evidence

23  presented, Petitioner has not shown beyond a reasonable doubt that any instructional

24  error contributed to the verdict obtained.

25  Accordingly, the Court finds that the trial court did not commit instructional error

26  such that resulted in the violation of Petitioner's due process. See Estelle, 502 U.S. at

27  72. It is recommended that Petitioner's third claim for relief be denied.

28  **IV.   RECOMMENDATION**

Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __October 28, 2014__        ____ /s/ _Michael J. Seng_

UNITED STATES MAGISTRATE JUDGE